IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KATHLEEN T. KOTAKIS,           )
                               )
            Plaintiff,         )
                               )
       v.                      ) Civil Action No. 08-0285
                               )
WESCO DISTRIBUTION, INC.,      )
                               )
            Defendant.         )

MEMORANDUM

Gary L. Lancaster,                          June 26, 2009
U.S. District Judge.

        This is an action in employment discrimination.

Plaintiff, Kathleen T. Kotakis, alleges that defendant, WESCO

Distribution, Inc. ("WESCO"), discriminated and retaliated

against her because of her sex in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., and the

Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 et

seq.[1]

        Before the court is WESCO's motion for summary judgment

[doc. no. 29].  WESCO contends that Ms. Kotakis has failed to

establish a prima facia case of gender discrimination and

retaliation.  In the alternative, even assuming that Ms. Kotakis

has established her prima facia case, WESCO argues that summary

_____

        [1]

The same analysis applies to both the Title VII claim and the PHRA
claim.    Thus,  disposition  of  the  PHRA  claim  follows  from
disposition of the Title VII claim, and it need not be addressed
separately.  Weston v. Pennsylvania, 251 F.3d 420, 425 n.3 (3d Cir.
2001).

judgment is still proper because Ms. Kotakis has not come forth with sufficient evidence to prove that WESCO's legitimate, non-discriminatory reason for terminating her was a pretext for gender discrimination and retaliation. In response, Ms. Kotakis argues that she has established material factual disputes sufficient to preclude summary judgment.

Because we find that no material fact is in dispute, WESCO is entitled to judgment as a matter of law.

I.  FACTUAL BACKGROUND

All material facts discussed herein are undisputed unless otherwise indicated. Other facts may be discussed in the memorandum in context.

In November 2006, an executive search firm put WESCO, a distributor of electrical construction products and provider of integrated supply services, in contact with Ms. Kotakis, a potential candidate for WESCO's open National Accounts Manager position. A National Accounts Manager position is the highest sales position at WESCO. This specific National Accounts Manager position related to generating new business for WESCO. Because it involved selling products and services to upper level executives of companies, it necessarily required extensive and high level client contact.

After confirming that Ms. Kotakis was interested in the National Accounts Manager position, Kevin Kerby, WESCO's Director of National Accounts and Marketing, and Art Hersberger, WESCO's Director of National Accounts, conducted telephone interviews with her. Based on the strength of these telephone interviews, Mr. Kerby invited Ms. Kotakis to travel to WESCO's office in Pittsburgh, Pennsylvania to interview with the company in-person.

Before traveling to Pittsburgh for in-person interviews, however, Ms. Kotakis requested that her contact at the executive search firm, Brian Joseph, talk to Mr. Kerby regarding some of her concerns with WESCO. Specifically, Ms. Kotakis wanted to address the extent that she would be working with Mike Lutwig, WESCO's Director of Marketing. She explained that she wanted limited contact with Mr. Lutwig because of an alleged act of discrimination and harassment that occurred at their former employer, W.W. Grainger Company ("Grainger"). The incident at Grainger occurred in approximately 1995. Mr. Joseph discussed these concerns with Mr. Kerby, who assured him that Ms. Kotakis would have limited contact with Mr. Lutwig. Based on these assurances, Ms. Kotakis felt comfortable interviewing for the position with WESCO and, therefore, traveled to Pittsburgh for the additional in-person interviews.

While in Pittsburgh, Ms. Kotakis sat for in-person interviews with Mr. Kerby, Sue Auretto, Manager of Pricing and

Contract Administration, and Mr. Lutwig.  After the interviews, Mr. Kerby, Ms. Auretto, and Mr. Lutwig all agreed that WESCO should extend an offer of employment to Ms. Kotakis.  On March 13, 2007, Mr. Kerby offered her the National Accounts Manager position.  WESCO selected Ms. Kotakis for the position over several qualified male candidates.  On March 16, 2007, Ms. Kotakis accepted WESCO's offer of at-will employment as a National Account Manager reporting to Mr. Hersberger.  She began work on April 16, 2007.

The following week, Ms. Kotakis traveled to Pittsburgh for training.  On April 24, 2007, Mr. Kerby invited her to attend a Pittsburgh Pirates baseball game with several other WESCO employees and clients, including representatives from Shell Oil. Several attendees of the baseball game stated that they overheard Ms. Kotakis making derogatory and unprofessional remarks about Mr. Lutwig during the game.  Specifically, Greg Averill, the National Accounts Manager on the Shell Oil account, testified that Ms. Kotakis referred to Mr. Lutwig as a "pain in the ass" or a "pain in the neck."  [Doc. No. 31 at ¶ 35].  Mr. Hersberger heard Ms. Kotakis refer to Mr. Lutwig as an "asshole", "douche bag", "shit head", and "dumb fuck."  [Doc. No. 31 at ¶ 36].  Ms. Auretto heard Ms. Kotakis state that, when she previously worked with Mr. Lutwig at Grainger, she "wanted to punch him in the mouth."  [Doc. No. 31 at ¶ 37].

4

Ms. Kotakis denies that she made any such statements. She further explains that any statements that she made regarding Mr. Lutwig were in response to Mr. Hersberger's unwanted and aggressive interrogation regarding the 1995 incident with Mr. Lutwig at Grainger.

The next day, April 25, 2007, Ms. Kotakis and several WESCO employees were invited to a dinner hosted by the Shell Oil representatives. The WESCO employees and Shell Oil representatives in attendance state that Ms. Kotakis made inappropriate and unprofessional comments throughout the evening. Ms. Kotakis denies any such behavior.

Specifically, the WESCO employees complain of the following alleged incidents:

- Ms. Kotakis called Richard Stone, WESCO's pricing analyst, a "son of a bitch" and an "asshole" before dinner. [Testimony of Mr. Averill and Mr. Hersberger, Doc. No. 31 at ¶ 42].

- Ms. Kotakis told the waiter to "[g]ive those boys [the Shell representatives] whatever they want. They are the customer." [Testimony of Ms. Auretto, Mr. Hersberger, and Mr. Averill, Doc. No. 31 at ¶ 47]. The WESCO employees felt that this comment was inappropriate and unprofessional, especially given that the WESCO employees were the guests of Shell Oil that evening.

- Ms. Kotakis consistently interrupted conversations throughout the night and monopolized Mr. Hersberger's attention. [Testimony of Ms. Auretto, Mr. Hersberger, Mr. Averill, and Tim Phelan, Doc. No. 31 at ¶ 48].

- Ms. Kotakis frequently and inappropriately invaded Mr. Hersberger's personal space by speaking very close to his face during dinner. [Testimony of Ms. Auretto, Mr.

5

Hersberger, Mr. Averill, and Tim Phelan, Doc. No. 31 at ¶¶ 48-49].

• Ms. Kotakis inappropriately told the Shell Oil representatives that, although Mr. Averill was their current account manager, they were going to want her to manage their account instead. [Testimony of Ms. Auretto and Mr. Hersberger, Doc. No. 31 at ¶ 50].

Mr. Averill further testified that the next morning, he apologized to the Shell Oil representatives for Ms. Kotakis's inappropriate behavior at dinner.

The Shell Oil representatives, Bill Meyer and Brad White, in response to a subpoena issued in this action, confirmed that Ms. Kotakis acted inappropriately at dinner and that she appeared to embarrass the other WESCO employees. Mr. White also confirmed that Mr. Averill apologized to them the next morning for Ms. Kotakis's behavior.

Ms. Kotakis, however, disputes that she acted inappropriately at dinner. She also disputes that Mr. Averill apologized to the Shell Oil representatives the following morning. She instead states that Mr. Hersberger acted inappropriately at dinner when he again interrogated her about Mr. Lutwig and that she reluctantly answered his questions.

It is not in dispute, however, that on April 27, 2007, Mr. Kerby and Mike Dziewisz, WESCO's Director of Human Resources, contacted Ms. Kotakis regarding her behavior at dinner. They requested that Ms. Kotakis provide a written response to the allegations that she acted inappropriately. Mr. Kerby also

6

informed her that she was suspended and that she should have no further client contact.

In her April 30, 2007 written response to Mr. Kerby, Ms. Kotakis denied all allegations of inappropriate behavior at dinner. She mentioned having problems with Mr. Lutwig while at Grainger. She did not, however, mention any interrogation by Mr. Hersberger regarding her history with Mr. Lutwig either at the Pirates baseball game or at the dinner.

At the request of Mr. Dziewisz, written statements were also gathered from the other WESCO employees who attended the dinner. Each of these written statements directly contradicts Ms. Kotakis's recollection of the evening.

Mr. Averill, Ms. Auretto, Dan Fazio, WESCO's Director of National Accounts Relationship Development, Mr. Phelan, Mr. Hersberger, and Pete Dumpis, WESCO's Relationship Development Manager, all wrote that Ms. Kotakis acted unprofessionally at the dinner and that she lacked social grace. Mr. Hersberger, Ms. Kotakis's immediate supervisor, also recommended that Mr. Kerby terminate Ms. Kotakis immediately. Mr. Kerby testified that these statements "were consistent, they were disturbing, ... they presented a picture of a person whose manner, demeanor, professionalism in front of a customer [was] incompatible with the role that we were asking Ms. Kotakis to fill." [Doc. No. 32, Exh. A at 60]. Mr. Kerby states that, after reviewing the

7

written statements, he made the decision that Ms. Kotakis lacked the demeanor and professionalism necessary for a National Accounts Manager. Accordingly, he informed Ms. Kotakis of her termination on May 3, 2007.

Ms. Kotakis, however, denies that Mr. Kerby made the decision to terminate her based on her conduct at the dinner. Rather, she asserts that she was fired because she is a woman. She claims that WESCO did not hire women into the National Accounts Manager position and that Mr. Hersberger did not want to have a female National Accounts Manager reporting to him. Ms. Kotakis cites to Mr. Hersberger's deposition testimony where he noted that typically, more "purchasing people" are women, while more people in "industrial sales" are men. [Doc. No. 33 at 93]. WESCO's customer base is in industrial sales.

Ms. Kotakis also claims that similarly situated male employees at WESCO were not disciplined in the same way. Rather, they were given warnings before their terminations. WESCO disputes that the employees were similarly situated. Specifically, WESCO notes that these individuals were fired from WESCO for reasons other than unprofessional conduct in front of clients.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (internal quotation marks omitted). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248-49.

To demonstrate entitlement to summary judgment, defendant, as the moving party, is not required to refute the essential elements of the plaintiff's cause of action. Defendant need only point out the absence or insufficiency of plaintiff's evidence offered in support of those essential elements. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Matsushita Elec.

<u>Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

A non-moving plaintiff may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit. <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990). Rather, the non-moving plaintiff must offer specific evidence found in the record that contradicts the evidence presented by the defendant and indicates that there remains relevant factual disputes that must be resolved at trial.[2] <u>See</u> <u>id</u>. If the non-moving party does not respond in this manner, the court, when appropriate, shall grant summary judgment. Fed. R. Civ. P. 56(e).

It is on this standard that the court has reviewed the motion for summary judgment and the response thereto.

---

[2]

Ms. Kotakis's attempts to create a genuine issue of material fact based on WESCO's alleged failure to preserve electronically stored information fails. Specifically, Ms. Kotakis alleges that WESCO waited nearly eleven months after receiving notice of litigation to take steps to preserve its electronically stored information and that, consequently, not all relevant documents were produced. Recently, the United States District Court for the Western District of Pennsylvania reviewed a motion for sanctions on remarkably similar facts. <u>Phillips v. Potter</u>, No. 07-815, 2009 WL 1362049, at *4-6 (W.D. Pa. May 14, 2009). The <u>Phillips</u> court held that, even though the defendant failed to timely issue a litigation hold, sanctions were inappropriate because "there was no evidence that relevant documents were destroyed." <u>Id</u>. at 5. We find the same. Accordingly, Ms. Kotakis's spoliation argument fails.

10

III.  DISCUSSION

      A.  Discrimination

Ms. Kotakis contends that WESCO fired her on the basis of her gender.  In support of her theory, Ms. Kotakis claims that WESCO failed to hire females into the National Accounts Manager position.  Ms. Kotakis further claims that her supervisor, Mr. Hersberger, recommended that she be terminated because he possesses an animus against women.

WESCO argues that it is entitled to summary judgment on this claim because Ms. Kotakis cannot establish a prima facie case of discrimination, and furthermore cannot prove that WESCO's reasons for its decision were pretextual under the McDonnel Douglas test.

Ms. Kotakis argues that she can establish a prima facie case and prove pretext, but that, regardless, she is entitled to proceed under the less burdensome Price Waterhouse mixed-motive test.  According to Ms. Kotakis, she has produced both direct and circumstantial evidence that her gender was a motivating factor in WESCO's decision to terminate her employment.  She states that under Desert Palace, Inc. v. Costa, 539 U.S. 90, 99-102 (2003), this evidence is enough to proceed under a mixed-motive theory.  Proceeding under this theory, WESCO then has the burden to prove that it would have taken the same action, independent of the alleged gender discrimination.  Fakete v. Aetna, Inc., 308 F.3d

335, 338 (3d Cir. 2002) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 265-66 (1989)). WESCO "need not isolate the sole cause for the decision; rather it must demonstrate that with the illegitimate factor removed from the calculus, sufficient business reasons would have induced it to take the same employment action." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 147-48 (3d Cir. 2004). This evidentiary scheme essentially requires WESCO to place Ms. Kotakis in the same position she would have occupied absent discrimination. Id. at 148.

As an initial matter, we will assume for purposes of this discussion, that Ms. Kotakis has produced sufficient evidence of discriminatory attitudes about gender to warrant use of the Price Waterhouse mixed-motive test.[3] Fakete, 308 F.3d at 338. Proceeding under this test, WESCO must prove that it would have made the same employment decision regardless of Ms. Kotakis's gender. We find that WESCO has satisfied this burden, and that no reasonable juror could find to the contrary.

---

[3]

As we describe, infra, Ms. Kotakis has not shown any direct evidence of discrimination. Furthermore, the circumstantial evidence she relies on also does not support her claim of discrimination. We will, however, proceed under the more relaxed mixed-motive theory of recovery because if a reasonable jury could not find that Ms. Kotakis's gender was a motivating factor under the mixed-motive theory, then no reasonable jury could find that her gender was a determinative factor under the more burdensome McDonnel Douglas theory. See Mock v. Univ. of Pittsburgh at Johnstown, No. 04-314, 2007 WL 2253602, at 19 n.11 (W.D. Pa. Aug. 3, 2007).

12

The record is abundantly clear that WESCO, specifically Mr. Kerby, decided to terminate Ms. Kotakis solely as a result of complaints of inappropriate behavior during dinner on April 25, 2007. Each and every attendee at the dinner, with the exception of Ms. Kotakis, stated that Ms. Kotakis acted in an unprofessional and inappropriate manner. The six WESCO attendees stated that Ms. Kotakis was overbearing, rude, and loud, that she continuously interrupted conversation to redirect it to her control, and that she made them feel uncomfortable. Notably, both of the Shell Oil representatives also agreed that Ms. Kotakis's behavior was inappropriate and observed that she seemed to embarrass the other WESCO employees. This evidence clearly contradicts Ms. Kotakis's position that at no time did she act in an unprofessional manner.[4]

Based on the WESCO employees' written descriptions of Ms. Kotakis's behavior at dinner, Mr. Kerby determined that Ms. Kotakis's "manner, demeanor, professionalism in front of a customer [was] incompatible with the role that we were asking Ms.

---

[4]

We recognize that, in some circumstances, a plaintiff's own self-serving testimony may be sufficient to withstand a defendant's motion for summary judgment. See Pamintuan v. Nanticoke Mem. Hosp., 192 F.3d 378, 387 (3d Cir. 1999) (citing Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990) and Jackson v. Univ. of Pittsburgh, 826 F.2d 230, 236 (3d Cir. 1987)). Here, however, in light of the unanimous testimony of eight other people, including two impartial third parties, it would not be reasonable for a fact finder to conclude that Ms. Kotakis was a victim of gender discrimination based solely on Ms. Kotakis's denial that she acted inappropriately at dinner.

13

Kotakis to fill." [Doc. No. 32, Exh. A at 60]. Accordingly, he made the business decision to fire her. There is no evidence that gender played any role in this decision. In fact, Mr. Kerby made the decision to hire Ms. Kotakis, rather than other male applicants, only approximately one and a half months earlier. Where the same decision maker both hires and fires an employee within a short time span, these facts are evidence of non-discrimination. See Bintliff-Ritchie v. Am. Reinsurance Co., No. 05-3802, 2007 WL 556895, at *11 (D.N.J. Feb. 15, 2007) (citations omitted); James v. Allentown Bus. Sch., No. 01-857, 2003 WL 21652189, at *11 (E.D. Pa. June 2, 2003) (citations omitted).

        Ms. Kotakis, however, attempts to create a genuine issue of material fact by claiming that her gender was a motivating factor in WESCO's decision to terminate her. She offers the following in support: (1) a lack of female employees reporting to Mr. Hersberger over a 16 year period and Mr. Hersberger's testimony that females are not suited to function as National Accounts Managers in industrial sales; (2) that before the offer of employment to Ms. Kotakis was made, Mr. Hersberger did not know that she would be reporting to him; (3) that Mr. Hersberger inappropriately questioned Ms. Kotakis about Mr. Lutwig on April 24 and 25, 2007; (4) that her alleged inappropriate behavior on April 25, 2007 was not serious enough to terminate her immediately; and (5) that WESCO did not

terminate similarly situated male employees without first giving them an opportunity to improve their performance.

With respect to Ms. Kotakis's first three arguments, we find that her allegations of animus towards females on the part of Mr. Hersberger are unsupported by the record. There is no evidence that WESCO and Mr. Hersberger refused to hire females in positions reporting to Mr. Hersberger. In fact, Mr. Hersberger recommended that Ms. Kotakis be hired by WESCO. Ms. Kotakis also mischaracterizes Mr. Hersberger's deposition statements regarding the number of females in the commercial building industry segment versus the industrial sales segment. While Ms. Kotakis suggests that Mr. Hersberger said that females are not well-suited to work in broad industry segments, he instead simply stated his observation that more females work in the commercial building industry segment.

There is also no evidence that gender played any role in Mr. Hersberger's decision to recommend her termination. Ms. Kotakis has adduced no evidence that Mr. Hersberger interrogated her. None of the witnesses overheard such an interrogation. Ms. Kotakis did not reference the interrogations in her statement to Mr. Kerby explaining her behavior at dinner. Ms. Kotakis's allegations that Mr. Hersberger's recommendation stemmed from his intense interrogations about Mr. Lutwig are based on pure speculation. Moreover, even if we could find that Mr. Hersberger

recommended Ms. Kotakis's termination based on animus, that fact would carry less importance because the ultimate decision maker was Mr. Kerby.

Second, Ms. Kotakis's opinion that her alleged behavior at dinner was an insufficient reason to terminate her is contrary to the law of this jurisdiction. A court may not question a defendant's business decision to terminate an employee. <u>Kerns v. Borough of Wilkinsburg</u>, No. 07-1114, 2009 WL 112095, at *3 (W.D. Pa. Jan. 16, 2009) (citing <u>Brewer v. Quaker State Oil Refining Corp.</u>, 72 F.3d 326, 332 (3d Cir. 1995)). Here, the evidence shows that Mr. Kerby decided to terminate Ms. Kotakis after conducting a full investigation, including a consultation with WESCO's Human Resources department. Absent proof of an unlawful motive, any second guessing of the propriety of this decision is not a proper function of this court.

Finally, we find that there is no evidence that WESCO treated similarly situated male employees more favorably than Ms. Kotakis. None of the employees Ms. Kotakis's identifies as comparators engaged in inappropriate and unprofessional conduct before a client. Accordingly, that they were given warnings before being fired is inconsequential to Ms. Kotakis's allegations here.

Accordingly, Ms. Kotakis's allegations of gender discrimination are based solely on mere speculation and

conjecture. These unsupported arguments and allegations are not enough to defeat WESCO's motion for summary judgment. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990). There is no reasonable conclusion other than that WESCO's decision would have been the same regardless of Ms. Kotakis's gender.

As such, we conclude that no reasonable juror could find in Ms. Kotakis's favor on her gender discrimination claim. Given that we reach this conclusion under the test more favorable to Ms. Kotakis, we similarly find that no reasonable juror could find in Ms. Kotakis's favor under the McDonnell Douglas test. Under that test, Ms. Kotakis must discredit the reasons WESCO gave for its decision, or otherwise prove that discrimination was the real reason for its decision. Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999); Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). Contrary to Ms. Kotakis's position, she cannot discredit Mr. Kerby's concerns about her lack of the demeanor and professionalism necessary for a National Accounts Manager. These concerns were legitimate, reasonable, and supported by the evidence Mr. Kerby had gathered from the WESCO employees when he made his decision. Ms. Kotakis has offered no other evidence to prove that gender discrimination was the real reason for Mr. Kerby's decision. Thus, Ms.

Kotakis's gender discrimination claim fails under the <u>McDonnell Douglas</u> test as well.

Because no reasonable juror could find in Ms. Kotakis's favor on her gender discrimination claim under either potentially applicable legal theory, we enter summary judgment in favor of WESCO.

B. <u>Retaliation</u>

Ms. Kotakis alleges that she was terminated by WESCO as a direct result of the complaints that she made at Grainger regarding Mr. Lutwig. WESCO denies this allegation on the basis that Ms. Kotakis cannot establish a causal relationship between her complaints at Grainger and her termination from WESCO.

To establish a case of retaliation under Title VII, Ms. Kotakis must show that: (1) she engaged in a protected activity under Title VII; (2) she suffered an adverse action; and (3) there was a causal connection between the protected activity and the adverse employment action. <u>Moore v. City of Phila.</u>, 461 F.3d 331, 340-41 (3d Cir. 2006) (citation omitted).

WESCO does not argue that Ms. Kotakis has not satisfied the first two prongs of her <u>prima facie</u> case of retaliation. Rather, WESCO argues that Ms. Kotakis cannot establish the third prong - that there was a causal connection between the protected activity and the adverse employment action.

18

In assessing whether there is a causal connection between the protected activity and the adverse employment action, courts consider a number of factors, including the temporal proximity between the protected conduct and the employment action, ongoing antagonism, inconsistent statements by the employer regarding its employment decision, and any other evidence from the record as a whole that is sufficient to establish a causal link. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000). Here, Ms. Kotakis has failed to adduce any evidence to demonstrate a causal link between her complaints of discrimination and harassment at Grainger in 1995 and her termination from WESCO in 2007.

Ms. Kotakis contends that she can show a causal connection between her complaints at Grainger and her termination from WECSO through Mr. Hersberger's questioning of Ms. Kotakis about the Grainger incident. Ms. Kotakis states that there is temporal proximity between Mr. Hersberger's questioning of her on April 24 and 25, 2007 and her May 3, 2007 termination. WESCO denies that this interrogation occurred and that any such interrogation could be related to her termination.

Assuming for purposes of this opinion that Mr. Hersberger did interrogate Mr. Kotakis about the Grainger incident on the dates alleged, there is still no evidence that he recommended her termination on this basis. Rather, the evidence

shows that he recommended her termination based on her behavior at dinner. This recommendation is consistent with the observations of every other person who attended dinner that evening.

Additionally, as discussed, _supra_, Mr. Kerby was the final decision maker regarding Ms. Kotakis's termination. It is not in dispute that Mr. Kerby knew about the Grainger allegations prior to offering Ms. Kotakis a position with WESCO.

Accordingly, we find that no reasonable jury could find the necessary causal link between the Grainger complaints and Ms. Kotakis's termination. Thus, it is appropriate to enter summary judgment in WESCO's favor on this claim.

V. CONCLUSION

For the foregoing reasons, judgment will be entered in WESCO's favor. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KATHLEEN T. KOTAKIS,                )
                                    )
                Plaintiff,          )
                                    )
        v.                          ) Civil Action No. 08-0285
                                    )
WESCO DISTRIBUTION, INC.,           )
                                    )
                Defendant.          )

                            ORDER

        AND NOW this 26th day of June, 2009, IT IS HEREBY
ORDERED that defendant WESCO Distribution, Inc.'s motion for
summary judgment [doc. no. 29] is GRANTED.

        Judgment shall be entered in defendant's favor.

        The Clerk of Court is directed to mark this matter as
closed forthwith.

                            BY THE COURT

                            _____
                                                        J.


cc: All Counsel of Record